**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x
NGM  INSURANCE COMPANY,                                    Docket No.:
                                                          07-CV-6517
                                  Plaintiff,

              -against-

BLAKELY PUMPING, INC. d/b/a ASSENTIAL PUMPING,    **EXHIBITS TO**
BRIAN J. BLAKELY, PETER J. SLINGERLAND, NANCY     **MOTION**
SLINGERLAND and PROGRESSIVE CASUALTY
INSURANCE COMPANY,

                                  Defendants.
-------------------------------------------------------------------------x


# EXHIBITS I-P

EXHIBIT "I"

COURTESY COPY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X

NGM INSURANCE COMPANY,

                              Plaintiff,

          -against-

                              Index No.
                              07-CV-5417

BLAKELY PUMPING, INC., d/b/a ASSENTIAL PUMPING,
BRIAN J. BLAKELY, PETER J. SLINGERLAND, NANCY
SLINGERLAND and PROGRESSIVE CASUALTY INSURANCE
COMPANY,

                              Defendants.
------------------------------------------------X

DATE:  January 30, 2008
       Poughkeepsie, New York

TIME:  11:31 A.M. - 12:03 P.M.

       Theresa Seholm, Reporter


                    DEPOSITION

                        OF

              PETER J. SLINGERLAND


       MARY T. BABIARZ COURT REPORTING SERVICE, INC.
                    (845) 471-2511

2

1

2

3          APPEARANCES:

4

5

6     BRILL & ASSOCIATES, P.C.
      Attorneys for Plaintiff
7     111 John Street, Suite 1070
      New York, New York  10038

8

9     BY:  HAYDN J. BRILL, ESQ.
      E-mail:  Hbrill@brillassociates.com

10

11    COOK, NETTER, CLOONAN, KURTZ & MURPHY, P.C.
      Attorneys for Defendants:
12    Blakely Pumping, Inc. and Brian Blakely
      85 Main Street
13    Kingston, New York  12402

14

15    BY:  ROBERT E. NETTER, ESQ.

16

17    GOLDSTEIN & METZGER, LLP
      Attorneys for Defendants:
18    Peter J. Slingerland and Nancy Slingerland
      40 Garden Street
19    Poughkeepsie, New York  12601

20

21    BY:  PAUL J. GOLDSTEIN, ESQ.

22

23

24

25

3

1
2
                            STIPULATIONS
3
4
5          IT IS HEREBY STIPULATED AND AGREED, by
6     and between the attorneys for the respective
7     parties hereto, that the sealing and filing
8     of the witness' deposition are hereby
9     waived.
10
11
12          It is further stipulated and agreed,
13     by and between the attorneys for the
14     respective parties hereto, that all
15     objections except as to form of the question
16     are reserved to the time of trial.
17
18
19          It is further stipulated and agreed,
20     by and between the attorneys for the
21     respective parties hereto, that they may
22     sign this deposition before any duly
23     qualified Notary Public.
24
25                    *    *    *    *

4

```
1
2    PETER J. SLINGERLAND,
3            a Defendant herein, having been first duly
4    sworn by a Notary Public of the State of New York
5    (Theresa Seholm), upon being examined, testified as
6    follows:
7
8                         * * * * *
9
10   EXAMINATION BY MR. BRILL:
11   Q    Would you state your name for the record,
12        please.
13   A    Peter J. Slingerland.
14   Q    Would you state your address for the record,
15        please.
16   A    21 Tall Oaks Drive, Kingston, New York
17        12401.
18   Q    Mr. Slingerland, my name is Haydn Brill.  I
19        represent a company by the name of National
20        Grange Mutual Insurance Company and they
21        have started a lawsuit to adjudicate certain
22        rights and obligations under an insurance
23        policy that was issued to Blakely Pumping in
24        connection with your accident of November 3,
25        2005.
```

MARY T. BABIARZ COURT REPORTING SERVICE, INC.
(845) 471-2511

1                     PETER J. SLINGERLAND

2                  I'm going to be asking you some

3              questions about this case, and if there's

4              anything that I ask you that you don't

5              understand, please let me know and I'll be

6              more than happy to rephrase the question.

7              Do you understand that?

8       A     Yes, sir.

9       Q     You've been deposed before?

10      A     Yes.

11      Q     So, one of the things you know is that the

12             person sitting to your right and to my left

13             is the court reporter who will be recording

14             all the questions and answers today, and she

15             can't record both of us at the same time, so

16             even though you may anticipate what I'm

17             going to ask you, please wait until I finish

18             my question so that she can prepare a clear

19             and clean transcript.  Okay?

20      A     That's fine.

21      Q     And you understand that even though there's

22             no judge or jury present today, your

23             testimony is under oath?

24      A     That's fine.

25      Q     Mr. Slingerland, what's your date of birth?

6

```
 1                    PETER J. SLINGERLAND
 2      A    July 23, 1948.
 3      Q    And what's your Social Security number?
 4      A    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.
 5      Q    And how long have you resided at 21 Tall
 6           Oaks Drive?
 7      A    Since I think 1996.
 8      Q    And is that a one-story or two-story
 9           residence?
10      A    Two-story colonial.
11      Q    And do you live there alone or with somebody
12           else?
13      A    I live with my wife, Nancy, and my stepson,
14           Ryan.
15      Q    And how old is Ryan?
16      A    He's 21.  He's in college.
17           BY MR. BRILL:
18                Off the record.
19
20                (Whereupon, there was a discussion
21           held off the record.)
22
23      Q    Mr. Slingerland, are you presently working?
24      A    Yes.
25      Q    And where do you work?
```

7

```
 1                     PETER J. SLINGERLAND
 2     A     Staff-Line, Incorporated.
 3     Q     And what kind of business is Staff-Line,
 4           Incorporated?
 5     A     It's a professional employer's organization.
 6     Q     Like an employment placement service?
 7     A     No.  It's a P.E.O.  It's now -- unless it's
 8           by New York to -- it's like the HR
 9           department for a small business.  We do
10           payroll.  We do HR, risk management.
11     Q     And the name of company is what?
12     A     Staff-Line.
13     Q     Staff-Line?
14     A     Staff hyphen Line.
15     Q     And where are they located?
16     A     On 53 Academy here in Poughkeepsie.
17     Q     And what are your job functions and
18           responsibilities?
19     A     Human resources manager.
20     Q     And what do you do as a human resource
21           manager?
22     A     Deal with employee issues from our clients,
23           policies, things like that.
24     Q     And how many years have you been employed at
25           Staff-Line?
```

8

1                        PETER J. SLINGERLAND

2     A     Since 2000, so about seven years.

3     Q     Do you drive to work?

4     A     Yeah.  My wife and I drive, carpool.

5     Q     Your wife works here in Poughkeepsie, as

6           well?

7     A     For IBM.

8     Q     Now, I understand on November 3, 2005 you

9           were involved in a motor vehicle accident

10          with a Brian Blakely, correct?

11    A     That's what I'm told.  I don't remember it.

12    Q     In or about that time, November of 2005, did

13          you own any motor vehicles?

14    A     Yes.

15    Q     And what kind of motor vehicles did you own?

16    A     We owned a 1997 Honda CRV and I also owned a

17          2003 Hyundai Sonata.

18    Q     And who was the primary driver of the

19          Sonata?

20    A     I guess you might say me.

21    Q     And what about the Honda CRV?

22    A     My wife drove that mostly.

23    Q     Now, did you have insurance on the Sonata?

24    A     Yes.

25    Q     And was that with State Farm Insurance

9

1              PETER J. SLINGERLAND

2         Company?

3     A    Yes, it was.

4     Q    And did your wife have insurance on the

5         Honda CRV?

6     A    Yes.

7     Q    Who was that with?

8     A    State Farm.

9     Q    Was that under the same policy or a

10        different policy that insured the Hyundai

11        Sonata?

12    A    I don't know specifically.  I think they

13        were separate.

14    Q    And the State Farm agent that you dealt

15        with, were they in Ballston Spa, New York or

16        someplace else?

17    A    No.

18    Q    Who was the State Farm agent that you dealt

19        with?

20    A    Diane Williams in Kingston.  I think

21        Ballston's the processing location.

22    Q    Yes.  I misread that.  Thank you.  And was

23        there a reason why you had separate policies

24        for the two vehicles?

25    A    I don't know.

```
 1                    PETER J. SLINGERLAND
 2    Q    From time to time did your wife drive the
 3         Sonata?
 4    A    Yes.
 5    Q    And from time to time did you drive the CRV?
 6    A    Yes, I did.
 7         BY MR. BRILL:
 8              Can you mark that, please.
 9
10              (Whereupon, the above-referred-to
11         declaration sheet from State Farm was marked
12         as Plaintiff's Exhibit 7 for Identification,
13         as of this date, by the reporter.)
14
15    Q    Mr. Slingerland, I'd like to show you what's
16         been marked as Plaintiff's Exhibit 7, which
17         is a declaration sheet from a State Farm
18         policy that was renewed in August of 2005,
19         and what I would like to ask you is if you
20         recognize that as a fair and accurate copy
21         of the State Farm policy at the time of its
22         last renewal prior to your accident.
23    A    Yes.
24         BY MR. GOLDSTEIN:
25              Off the record.
```

MARY T. BABIARZ COURT REPORTING SERVICE, INC.
(845) 471-2511

11

PETER J. SLINGERLAND

1

2

3          (Whereupon, there was a discussion

4          held off the record.)

5

6          BY MR. BRILL:

7    Q    Mr. Slingerland, did you understand the

8          State Farm policy -- either before or after

9          your accident, did you understand that your

10         State Farm policy had uninsured and

11         underinsured motorist limits of $100,000 per

12         accident?

13   A    I didn't really -- probably didn't really

14         completely understand it.

15   Q    Until after the accident?

16   A    Until after maybe.

17   Q    And after the accident did you understand

18         that your policy had a 100 slash 300 UM ---

19         (interrupted).

20   A    Yes.

21   Q    -- UIM --- (interrupted).

22   A    I think they tried to explain it to me, but

23         there's so many things with the policy, you

24         know?  When I purchased it, it was -- I

25         didn't really understand that part.

MARY T. BABIARZ COURT REPORTING SERVICE, INC.
(845) 471-2511

12

                    PETER J. SLINGERLAND

1

2   Q   Okay.  But you understand now that

3       underinsured motorist coverage pertains to

4       injuries of yours that might exceed the

5       liability limits of somebody who was

6       responsible for the accident?

7   A   Yeah, when I had some practical use, then

8       I'd understand it.

9   Q   Okay.  Aside from the State Farm insurance

10      policy on the Sonata and the CRV, did you

11      have any other types of auto policies in

12      your home at the time of the accident, that

13      were in effect at the time of the accident?

14      BY MR. GOLDSTEIN:

15          Why don't you ask him if there are any

16      other autos in the home.

17      BY MR. BRILL:

18  Q   Are there any other autos in the home?

19  A   Yes, my stepson does.

20  Q   And what kind of auto does he have?

21  A   Well, it's changed frequently.

22  Q   The one that he owned in November of 2005.

23  A   I don't remember.  He just recently

24      purchased one, so I don't remember what he

25      had.

1          PETER J. SLINGERLAND

2     Q    Do you remember who insured that vehicle in

3          November?

4     A    State Farm.

5     Q    State Farm, as well?  And you had a

6          homeowners policy?

7     A    Right.

8     Q    And that was with State Farm, as well?

9     A    Yes.

10    Q    And besides your personal auto and your

11         homeowners policies, did you have any other

12         insurance at the time of your accident?

13         BY MR. GOLDSTEIN:

14              What do you mean, like disability

15         insurance?

16         BY MR. BRILL:

17              Disability.

18         BY MR. GOLDSTEIN:

19              Life insurance?

20         BY MR. BRILL:

21              Anything.

22    A    I had life insurance.  My wife and I both

23         had that.  I had some disability insurance

24         through my employer.

25         BY MR. GOLDSTEIN:

14

```
 1                  PETER J. SLINGERLAND
 2              Health insurance?
 3         BY MR. BRILL:
 4    Q    You had health insurance at the time of the
 5         accident?
 6    A    It was through IBM.
 7         BY MR. GOLDSTEIN:
 8              Well, the answer is yes then.
 9         BY THE WITNESS:
10              Yes.  Right, right.
11    A    I can't think of anything else.
12         BY MR. BRILL:
13    Q    Okay.  Did there come a time when you were
14         advised that an offer had been made by
15         Progressive Insurance Company to settle in
16         whole or in part the personal injury claim
17         that you made against Brian Blakely in this
18         case in the sum of 25,000?
19         BY THE WITNESS:
20              Is that considered a settlement?
21    A    Can I ask him?
22         BY MR. BRILL:
23    Q    Sure.
24         BY THE WITNESS:
25              Is that considered a settlement?
```

MARY T. BABIARZ COURT REPORTING SERVICE, INC.
(845) 471-2511

```
 1                  PETER J. SLINGERLAND

 2           BY MR. GOLDSTEIN:

 3                Yes.

 4           BY THE WITNESS:

 5     A     Yes, then it was.

 6           BY MR. BRILL:

 7     Q     And did you accept that settlement from

 8           Progressive?

 9           BY MR. GOLDSTEIN:

10                Well, does --- (interrupted).

11           BY MR. BRILL:

12     Q     Was that settlement accepted by you?

13           BY MR. GOLDSTEIN:

14                Did they pay him $25,000?

15           BY MR. BRILL:

16     Q     Did they pay you $25,000?

17     A     Yes.

18     Q     And there were certain stipulations that

19           Progressive required as part of that

20           settlement that were explained to you by

21           your attorney, correct?

22     A     I believe so, yes.

23     Q     Okay.

24           BY MR. GOLDSTEIN:

25                Now you're testing me here to see if
```

16

```
 1                    PETER J. SLINGERLAND
 2          I'm doing my job, right?
 3          BY MR. BRILL:
 4      Q   And other than the $25,000 that you received
 5          from Progressive Insurance Company, have you
 6          received any other moneys for your bodily
 7          injury or personal injury claims other than
 8          health insurance for your medical bills?
 9      A   Well, the disability insurance through my
10          employer.
11      Q   Okay.
12      A   Some went in on that.
13      Q   Okay.
14      A   That's since stopped.  I can't think of
15          anything else.
16      Q   You didn't receive any monies directly from
17          the Blakelys --- (interrupted).
18      A   No.
19      Q   -- or Blakely Pumping?
20      A   Nothing, no.
21      Q   Okay.  And the disability payments, those
22          were paid by the State or by a private
23          health insurance?
24      A   A private insurance company.
25      Q   And that was Unum?
```

1                    PETER J. SLINGERLAND

2      A    Yes.

3      Q    First Unum?

4      A    Yes.  That's the disability insurance.

5      Q    And how much did you receive in disability

6           benefits, approximately?

7      A    I could guess, but I don't know if you want

8           me to guess.

9      Q    Approximate.  I'm not going to hold you to

10          an exact number.

11     A    About probably 3, $4,000 in total.

12     Q    And the medical expenses that you incurred

13          in connection with the injuries you

14          sustained in the accident, those were paid

15          by your health insurance?

16     A    A portion of it was.

17     Q    And what portion did you pay out-of-pocket

18          for your medical expenses?

19          BY MR. GOLDSTEIN:

20               I think he means no fault paid as

21          well.  No fault paid.  It was exhausted.

22          Then his MVP paid.

23          BY MR. BRILL:

24     Q    Okay.  Did you incur any expenses out of

25          pocket in connection with the injuries you

```
 1                    PETER J. SLINGERLAND
 2         received in the motor vehicle accident on
 3         November 3, 2005?
 4    A    Yes.
 5    Q    Approximately how much?
 6    A    I have no idea.
 7         BY MR. GOLDSTEIN:
 8              That includes co-pays, you understand?
 9         BY THE WITNESS:
10              Right, right.
11         BY MR. BRILL:
12    Q    Co-pays and the benefits.
13    A    That's why it's hard to figure here exactly.
14         BY MR. GOLDSTEIN:
15              That's fine.
16         BY THE WITNESS:
17    A    I wouldn't want to guess, because that's
18         what I'd be doing.
19         BY MR. BRILL:
20    Q    Can you approximate?
21    A    That would be a guess --- (interrupted).
22    Q    Would it be hundreds --- (interrupted).
23    A    -- but if you want to accept that ---
24         (interrupted).
25    Q    -- thousands --- (interrupted).
```

```
1                    PETER J. SLINGERLAND
2     A     -- I can do that.
3     Q     -- more than a thousand, less than a
4           thousand?
5
6                 (Whereupon, there was a discussion
7           held off the record.)
8
9     Q     Would it be hundreds of dollars, thousands
10          of dollars, more or less than a thousand
11          dollars?  However you can approximate it.
12    A     I would guess less than a thousand dollars.
13
14                (Whereupon, there was a discussion
15          held off the record.)
16
17          BY MR. BRILL:
18                Could you mark that as 8, Plaintiff's
19          Exhibit 8.
20
21                (Whereupon, the above-referred-to
22          settlement letter was marked as Plaintiff's
23          Exhibit 8 for Identification, as of this
24          date, by the reporter.)
25
```

```
 1                    PETER J. SLINGERLAND

 2     Q    Mr. Slingerland, as part of your settlement

 3          with Mr. Blakely in this case, were you

 4          requested to sign a release in connection

 5          with the case?

 6     A    That's my signature, yes.

 7     Q    And I was going to say, I'd like you to take

 8          a look at Plaintiff's Exhibit 8 for

 9          Identification and ask you if that's a fair

10          and accurate copy of the release that you

11          were asked to sign, to the best of your

12          knowledge?

13     A    To the best of my knowledge, yes.

14          BY MR. BRILL:

15               Mark that, please.

16

17               (Whereupon, the above-referred-to copy

18          of the State Farm Policy was marked as

19          Plaintiff's Exhibit 9 for Identification, as

20          of this date, by the reporter.)

21

22     Q    By the way, your stepson's name is

23          Ryan Slingerland?

24     A    No, Ryan Lemming.

25     Q    Ryan?
```

MARY T. BABIARZ COURT REPORTING SERVICE, INC.
(845) 471-2511

21

```
 1                    PETER J. SLINGERLAND
 2    A    Lemming.
 3    Q    Does he go by the name of Brian Slingerland
 4         for any reason?
 5    A    No.  I think that was a mistake on State
 6         Farm's part.
 7    Q    Now, I'd like to show you what's been marked
 8         as Plaintiff's Exhibit 9 and ask you if you
 9         recognize this is the State Farm insurance
10         policy that was in effect at the time of
11         your accident.
12    A    I think this is a general policy for State
13         Farm.  It probably includes mine.  It
14         probably includes everybody else's, too.
15    Q    And you'll notice that there is a stamp on
16         there that says Thomas Hull, Agent, in the
17         middle of the page.
18    A    Okay.
19    Q    Is Mr -- is Diane Williams associated with
20         that agency?
21    A    I don't know.  I don't know the name.
22    Q    Do you know anybody at 182 Aaron Court in
23         Kingston, New York?
24    A    No.
25    Q    Also known as the Martin Aaron Office
```

1                    PETER J. SLINGERLAND

2          Complex?

3     A    Could be an associate of Diane Williams.   I

4          don't know.

5     Q    Does that sound similar to the address that

6          you know of from Ms. Williams?

7     A    I don't know.   I'm trying to think of her

8          address.   I don't -- it's not that.

9     Q    Do you have Ms. Williams' address or

10         telephone number at home someplace?   Do you

11         know how to get in contact with her?   Do you

12         have a card?

13    A    I'm trying to see if it's on here.

14         BY MR. GOLDSTEIN:

15              No, no.   He wants to know what you

16         remember.   Forget about that.   Don't even

17         look.

18         BY THE WITNESS:

19              Okay.

20    A    I probably have something home.

21         BY MR. BRILL:

22    Q    What I'm going to do is I'm going to ask the

23         court reporter to leave a space in the

24         transcript, a blank space.

25    A    Okay.

23

```
                           PETER J. SLINGERLAND
 1
 2     Q     What's going to happen is we're going to

 3           provide your attorney with a copy of this

 4           transcript --- (interrupted).

 5     A     Okay.

 6     Q     -- ask you to review it and correct any

 7           mistakes that were made, and when you see

 8           this blank, if you could insert the address

 9           and phone number, if you have it.

10     A     Sure.

11     Q     Or the address or the phone number for

12           Ms. Williams.

13

14                 (INFORMATION REQUEST)

15

16     A_____

17

18           BY MR. GOLDSTEIN:

19                 Well, her phone number, if you look on

20           the bottom left-hand corner of the dec.

21           sheet, which you have marked as -- what

22           number?

23           BY MR. BRILL:

24                 P7.

25           BY MR. GOLDSTEIN:
```

24

```
1              PETER J. SLINGERLAND
2              P7.  At least my copy has numbers.
3        Yours?
4        BY MR. BRILL:
5              No.
6        BY MR. GOLDSTEIN:
7              Okay.  Then why don't you write it
8        down (handing).
9        BY MR. BRILL:
10             That's what I was looking for.  I
11       thought the address might be there, too.
12       BY MR. GOLDSTEIN:
13             Well, it's not there.
14       BY MR. BRILL:
15             Okay.  Just let the record reflect
16       that, I guess, the copy that was made for me
17       cut off -- well, actually, it didn't cut
18       off.  Did not contain the telephone number,
19       whereas Mr. Goldstein's copy does.  Let's
20       see.  Is this the same --- (interrupted).
21       BY MR. GOLDSTEIN:
22             I don't know.
23       BY MR. BRILL:
24             Otherwise it appears to be the same
25       form, but one has Ms. Williams' phone number
```

PETER J. SLINGERLAND

1

2    and one doesn't.

3    BY MR. GOLDSTEIN:

4        You want to make another copy of that?

5    BY MR. BRILL:

6        (Handing).

7    BY MR. GOLDSTEIN:

8        That's weird, huh?

9    BY MR. NETTER:

10        One probably came from the company

11    which didn't have it on it and the other

12    came from the agency, which had it.

13    BY MR. BRILL:

14        Well, the telephone numbers are

15    different from Hull and -- unless ---

16    (interrupted).

17    BY MR. GOLDSTEIN:

18        Well, who knows.

19    BY MR. BRILL:

20        There's one way to find out.  I could

21    just call the Hull number and ask if

22    Diane Williams is there.

23    BY MR. GOLDSTEIN:

24        Yes.  You want me to write it -- okay.

25    BY MR. BRILL:

1                    PETER J. SLINGERLAND

2              If you would make me a copy of yours.

3         BY MR. GOLDSTEIN:

4              This one?  Okay.

5         BY MR. BRILL:

6              Yes.  We'll mark that as one and then

7         we'll mark it separately.

8         BY MR. GOLDSTEIN:

9              You want a copy of this?

10        BY MR. NETTER:

11             No.

12        BY MR. GOLDSTEIN:

13             Anything else or you're done?

14        BY MR. BRILL:

15             If you could just make a copy of that.

16        BY MR. GOLDSTEIN:

17             Oh, you want me to do it now?

18        BY MR. BRILL:

19             Yes, that way I can mark it.

20

21             (Whereupon, there was a brief recess

22        taken.)

23

24        BY MR. BRILL:

25             Would you mark that, please,

MARY T. BABIARZ COURT REPORTING SERVICE, INC.
(845) 471-2511

```
 1                    PETER J. SLINGERLAND
 2          Plaintiff's 10.
 3
 4               (Whereupon, the above-referred-to
 5          declaration sheet with phone number and
 6          address of Williams was marked as
 7          Plaintiff's Exhibit 10 for Identification,
 8          as of this date, by the reporter.)
 9
10     Q    Mr. Slingerland, I'd like to show you what's
11          been marked as Plaintiff's Exhibit 10 and
12          Plaintiff's Exhibit 7 and ask you to compare
13          those documents and if you would agree with
14          me that they're identical with the exception
15          that on Plaintiff's Exhibit 10 there is a
16          phone number underneath Diane Williams'
17          name?
18     A    Yes, they do appear the same.
19     Q    Okay.  Thank you.  So, it's fair to say that
20          Plaintiff's Exhibit 10 and Plaintiff's
21          Exhibit 7 both fairly and accurately reflect
22          the automobile insurance coverage that you
23          had in effect with State Farm at the time of
24          your accident?
25     A    Correct.
```

28

```
 1              PETER J. SLINGERLAND
 2    Q    And I should preface -- follow up that
 3         question by saying applicable to the Hyundai
 4         Sonata.
 5    A    That's fine.  Yes.  Thank you.
 6    Q    At some point after your accident on
 7         November 3, 2005 did you or somebody else on
 8         your behalf, to your knowledge, file or put
 9         State Farm on notice of your intention to
10         make a claim for underinsured motorist
11         benefits?
12         BY MR. GOLDSTEIN:
13              Could you read that question back,
14         Terry?
15
16              (Whereupon, the pending portion of the
17         record was read by the reporter.)
18
19         BY MR. GOLDSTEIN:
20              Object to form.
21
22              (Whereupon, there was a discussion
23         held off the record.)
24
25         BY MR. BRILL:
```

29

```
 1                    PETER J. SLINGERLAND
 2              Can he answer?
 3         BY MR. GOLDSTEIN:
 4              Yes.  I don't care.  Off the record.
 5
 6              (Whereupon, there was a discussion
 7         held off the record.)
 8
 9         BY MR. BRILL:
10              I'll rephrase the question.
11    Q    Have you or Mr. Goldstein, on your behalf,
12         advised State Farm that you may be making a
13         claim at some point for underinsured
14         motorist benefits in connection with your
15         accident on November 3, 2005?
16    A    I believe someone has.
17    Q    You have not testified in connection with
18         any claim that you intend to make against
19         State Farm for underinsured motorist
20         benefits at this time, correct?
21    A    I can't recall, no, I don't, sir.
22         BY MR. BRILL:
23              I guess, by counsel, you have some
24         type of notice that you provided to State
25         Farm of the accident and an intention at
```

PETER J. SLINGERLAND

2      some point in the future that you may be

3      making a claim for underinsured motorist

4      benefits?

5      BY MR. GOLDSTEIN:

6           Correct.

7      BY MR. BRILL:

8           If you have a copy of that letter to

9      State Farm, we would appreciate a copy.

10     BY MR. GOLDSTEIN:

11          Okay.  Well, you have the permission

12     that they gave.

13     BY MR. BRILL:

14          I know.

15     BY MR. GOLDSTEIN:

16          That I think --- (interrupted).

17     BY MR. BRILL:

18          But I assume there's some letter

19     claiming a notice of claim so you wouldn't

20     get a late notice disclaimer.

21  Q   By the way, how much were you earning at

22     your job in November of 2005?

23  A   Well, my job is one thing.  I was also

24     collecting retirement.  It was probably

25     about 30, 31,000.

31

1                          PETER J. SLINGERLAND

2    Q    And how much are you earning at the present

3         time?

4    A    About the same.

5    Q    And how many hours a week were you working

6         in November of 2005?

7    A    30 to 35.

8    Q    And how many hours are you working now?

9    A    Same.

10   Q    And do you work five days a week, something

11        else?

12   A    Usually four days a week.

13   Q    Have you ever had any conversations with

14        Brian Blakely, Steven Blakely or any other

15        person affiliated with Blakely Pumping about

16        their insurance coverage in connection with

17        your accident of November 3, 2005?

18   A    Not that I could recall, no.

19   Q    And did Diane Williams take care of all the

20        other State Farm policies that were

21        applicable to the other vehicles in your

22        household?

23   A    I believe she worked with my wife on that.

24   Q    She worked with your wife, meaning she

25        worked in getting the insurance with your

PETER J. SLINGERLAND

 1

 2          wife or she works physically with your wife

 3          at IBM?

 4    A     No.  She worked with my wife after my

 5          accident.  Is that your question?

 6    Q     No.  No.  My question is, did Diane Williams

 7          take care of all your personal automobile

 8          insurance needs for not only your car but

 9          all the other cars in your household, the

10          CRV and --- (interrupted).

11    A     Yes.

12    Q     Does she still take care of it?

13    A     Yes.

14    Q     Do you have copies of the 2005 State Farm

15          automobile policy on the Hyundai Sonata at

16          home?

17    A     Bills?

18          BY MR. GOLDSTEIN:

19              You mean the actual policy as opposed

20          to --- (interrupted).

21          BY MR. BRILL:

22    Q     The actual policy itself, or is that policy

23          that we marked applicable for all the

24          vehicles?

25    A     I don't think we could find it.

33

```
1                    PETER J. SLINGERLAND
2         BY MR. BRILL:
3              Okay.  Thank you, sir.  That all I
4         have.
5         BY MR. NETTER:
6              I have no questions.
7
8              (Whereupon, the deposition of
9         PETER J. SLINGERLAND was concluded at
10        12:03 p.m.)
11
12
13                        X_____
                              PETER J. SLINGERLAND
14
15
16   Subscribed and sworn to before me
17   this_____ day of_____2008.
18   X_____
     NOTARY PUBLIC
19
20
21
22
23
24
25
```

MARY T. BABIARZ COURT REPORTING SERVICE, INC.
(845) 471-2511

```
 1

 2                        I N D E X

 3

 4  WITNESS                                    PAGE

 5  PETER J. SLINGERLAND                          4

 6

 7

 8  EXAMINATION BY                             PAGE

 9  MR. BRILL                                     4

10

11

12

13

14  PLAINTIFF'S EXHIBITS
    FOR IDENTIFICATION        DESCRIPTION     PAGE
15
    7        Declaration sheet from State Farm    10
16
    8        Settlement letter                    19
17
    9        Copy of the State Farm Policy        20
18
    10       Declaration sheet with phone number  27
19           and address of Williams

20

21

22

23  INFORMATION TO BE INSERTED                 PAGE

24  Insert address and telephone number for       23
    Diane Williams
25
```

MARY T. BABIARZ COURT REPORTING SERVICE, INC.
(845) 471-2511

35

```
 1
 2                  C E R T I F I C A T E
 3     STATE OF NEW YORK      )
                              )SS:
 4     COUNTY OF DUTCHESS     )
 5
 6            I, THERESA SEHOLM, a Court Reporter and
 7     Notary Public within and for the State of New York, do
 8     hereby certify:
 9
10            That PETER J. SLINGERLAND,
11     the witness whose deposition is hereinbefore set
12     forth, was duly sworn by me and that such deposition
13     is a true record of the testimony given by the
14     witness.
15            I further certify that I am not related to
16     any of the parties to this action by blood or marriage
17     and I am in no way interested in the outcome of this
18     matter.
19            IN WITNESS WHEREOF, I have hereunto set my
20     hand this 4th day of February, 2008.
21
22
23                              Theresa Seholm
24
25
```

36

1

2                          LAWYER'S NOTES

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT "J"



STATE FARM INSURANCE COMPANIES

State Farm Mutual Automobile Insurance Company
PO Box 8000
Ballston Spa NY 12020

AUTO RENEWAL

| | |
|---|---|
| POLICY NUMBER | 03 2008 - 24 B222-B14-52A |
| AUG 14 2005 | EB 14 2006 |

3C3G -7160   A

SLINGERLAND, PETER J
21 TALL OAKS DR
KINGSTON NY  12401-7426

| DATE DUE | PLEASE PAY THIS AMOUNT |
|---|---|
| AUG 14 2005 | $302.06 |

| Coverages and Limits | | Premium |
|---|---|---|
| A | Liability | |
| | Bodily Injury 100,000/300,000 | |
| | Without Supplemental Spousal | |
| | Property Damage 100,000 | 95.5 |
| P11 | Personal Injury Protection | 53.7 |
| Q3 | Additional Personal Injury | |
| | Protection | 14.3 |
| D | 500WG Deductible Comprehensive | 42.3 |
| G | 500 Deductible Collision | 76.1 |
| R1 | Car Rental & Travel Expense | |
| | $20 Per Day,  $400 Max | 7.2 |
| U | Uninsured/Underinsured Motorist | |
| | Bodily Injury 100,000/300,000 | 12.7 |

*Your premium is based on the following . . .If not correct, contact your agent.*
2003 HYUNDAI SONATA          VIN   KMHWF35H63A890331

Class  6AJ050F000

**Drivers of vehicle in your household...**
Principal driver is age 50 - 74 and there are no unmarried drivers
under 25 assigned to this car.

**Ordinary use of vehicle...**
Pleasure or not more than 30 miles weekly to and from work or school.
Driven 7,500 miles or less annually. (National average is 12,000 miles
annually.)

**Amount Due**          $302.0

Your premium has already been adjusted
by the following:

**Premium Reductions**
| | |
|---|---|
| Multiple Line | 47.2 |
| Antilock Brakes | 12.6 |
| Multicar | 62.5 |
| Accident Prevention | 25.0 |
| Antitheft | 4.7 |
| Running Light | 7.4 |
| Vehicle Safety | 3.5 |
| Accident-Free | 75.1 |

Your Multiple Line Discount has increased. For additional information, please refer to the enclosed News & Notes article or contact your agent.

**Your Defensive Driving Discount will be removed in six months. To keep the discount, you must complete an approved course and take the certificate to your agent.**

CONVENIENT PAYMENT OPTION:  You may use one of State Farm's alternate payment plans which divides your present premium into two separate payments.

You may pay one half of the amount due, $151.03, plus a handling charge of $2.00.  The amount due on AUG 14 2005 will be $153.03.

The remaining half will be due on OCT 13 2005.  We'll send you  a reminder notice.

The following list of drivers is shown for informational purposes only and does not extend or expand coverage beyond that contained in this automobile policy.  Our records indicate the persons listed below are the only licensed drivers reported to us:

NANCY A SLINGERLAND, PETER SLINGERLAND, RYAN SLINGERLAND.

If the above information is inaccurate or incomplete, please contact your agent immediately to make corrections.

**\*\*\* Your policy has the Guaranteed Renewal Endorsement. \*\*\***

*Thanks for letting us serve you...*

Agent          DIANE WILLIAMS
Telephone



94 7741 4014

*See reverse side for important information*
*Please keep this part for your record.*

Prepared   JUN 23 2005

EXHIBIT "K"

# State Farm Insurance Companies



PO Box 8050
Ballston Spa, NY 12020 8050
Hours of Operation:
Mon-Fri 7am-7pm; Sat 9am 5pm

April 27, 2007

**RECEIVED**

APR 30 2007

Paul Goldstein
Goldstein And Metzger
40 Garden St
Poughkeepsie, NY 12601

GOLDSTEIN & METZGER, LLP

RE:    Claim Number:    52-2925-469
       Date of Loss:    November 3, 2005
       Our Insured:     Peter J Slingerland
       Your Client:     Peter J Slingerland

Dear Mr. Goldstein:

State Farm hereby grants permission for you to accept the primary tort feasor's offer of $25,000.

Upon settlement, please forward a copy of their payment and the executed release.

Sincerely,

Julie Bourey
Claim Representative
(800) 599-8257

State Farm Mutual Automobile Insurance Company

CC:

EXHIBIT "L"



PLAINTIFF'S EXHIBIT 8  1/30/08 (75)

**KNOW ALL MEN BY THESE PRESENTS, THAT**

PETER SLINGERLAND and NANCY SLINGERLAND,

**RESIDING AT:**    21 Tall Oaks Drive, Kingston, New York 12401,

**AS RELEASORS,**

in consideration of the sum of TWENTY FIVE THOUSAND Dollars

($25,000.00),

the receipt of which is hereby acknowledged, do hereby remise, release and forever discharge, with prejudice,

BRIAN J. BLAKELY,

**AS RELEASEES,**

Releasees' heirs, executors, and administrators, of and from all and all manner of actions, causes of action, suits, proceedings, debts, dues, contracts, judgments, damages, claims and demands whatsoever in law or equity, which against the said Releasees we ever had, now have, or which our heirs, executors, or administrators hereafter can, shall, or may have for or by reason of any matter, cause, or thing whatsoever, from the beginning of the world to the date of these presents, for personal injuries.

In full settlement of the personal injury claim arising out of an accident on or about November 3, 2005 for bodily injury and conscious pain and suffering; however, this release shall not affect the subrogation rights of any individuals, corporations, insurance carriers or other entities.

**IN WITNESS WHEREOF,** I have hereunto set my hand the 4th day of May, 2007.

_____
PETER J. SLINGERLAND

_____
NANCY SLINGERLAND

STATE OF NEW YORK    )
COUNTY OF Ulster     ) ss:

On May 4, 2007 before me personally came PETER SLINGERLAND and NANCY SLINGERLAND to me known, and known to me to be the individuals described in, and who executed the foregoing RELEASE, and duly acknowledged to me that they executed the same.

MARYANNE QUICK
Notary Public, State of New York
Qualified in Ulster County
#01QU4788039
Commission Expires March 30, 20 11

_____
NOTARY PUBLIC

Goldstein & Metzger, LLP
40 Garden Street • Poughkeepsie, NY 12601 • (845) 473-7000

# EXHIBIT "M"

# Mainetti, Mainetti & O'Connor, P.C.

ATTORNEYS AT LAW
303 CLINTON AVENUE
P.O. BOX 3058
Kingston, New York 12402-3058

ALFRED B. MAINETTI
VICTOR R. MAINETTI (1956-1995)
JOSEPH E. O'CONNOR

REGINA FITZPATRICK

PLEASE RESPOND TO:
P.O. BOX 3058
KINGSTON, NEW YORK 12402-3058

SENATE HOUSE PROFESSIONAL BUILDI

(845) 331-9484
FAX (845) 331 2004

331-9493

January 3, 2006

National Grange Mutual Insurance Company
55 West Street
Keene, New Hampshire 03431

LEGAL DEPT.

JAN 0 6 2004

Re: Assential Pumping, Inc.
Policy No.: MPV52824
Account No.: CACV52824
MVA- D/A: 11/3/05
Our client: Brian Blakely

MPV 52824

Dear Sirs:

Please be advised that this office is personal counsel for Brian Blakely an employee of Assential Pumping, Inc. On the above date, Mr. Blakely, while employed for Assential Pumping, Inc. was involved in a motor vehicle accident in Ulster County, New York, with Peter J. Slingerland. Enclosed herein is a copy of the summons and complaint which was served on Mr. Blakely on December 23, 2005.

At the time of the occurrence, Mr. Blakely was driving a motor vehicle insured with Progressive Casualty. The contact agent for Progressive is Mr. Ross Cardwell, at Progressive Claims Service, 1401 Route 52, Suite 200, Fishkill, New York 12524-3227. The policy limits for Progressive Insurance is $25,000/$50,000.

It is my understanding that Mr. Slingerland has suffered severe physical injury in this case, that is fairly compensatory in a sum far greater than the minimum policy afforded by Progressive. Please keep me apprised of all negotiations and progress in this case.

Very truly yours,

MAINETTI, MAINETTI & O'CONNOR, P. C.

BY:  ALFRED B. MAINETTI, ESQ.
ABM:mal
cc:   Mr. Ross Cardwell
      Mr. Brian Blakely

# EXHIBIT "N"

National
Grange
Mutual
Insurance
Company



220 Salina Meadows Parkway
Suite 200
P. O. Box 4828
Syracuse, NY 13221
800-962-5515 (Ext 1460)
315-434-1460 (Direct)
315-434-1429 (Fax)

January 25, 2006

Assential Plumbing, Inc.
11 Mary Lou Lane
Shokan, NY 12481

RE:    Our Insured:  Assential Plumbing, Inc.
       Our File # MPV52824-001-678
       Date of Accident: 11/3/05

Dear Policyholder:

A letter was received from the attorney representing Brian Blakely putting us on notice of a claim being made against you. I am the adjuster who has been assigned to handle this claim.  I've not been able to reach you by phone.  It is very important that I speak with you and would appreciate your calling me at the toll free number listed above when you receive this letter.

Thank you.

Very truly yours,

Edward C. Airel
Claim Representative

A Main Street America Company

EXHIBIT  O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

NGM  INSURANCE COMPANY,                                    Docket No. 07-CV-6517

        Plaintiff,

        -against-

BLAKELY PUMPING, INC. d/b/a ASSENTIAL PUMPING,         **AFFIDAVIT OF**
BRIAN J. BLAKELY, PETER J. SLINGERLAND, NANCY          **CHRISTOPHER BOYCE**
SLINGERLAND and PROGRESSIVE CASUALTY
INSURANCE COMPANY,

                        Defendants.
------------------------------------------------------------------------x

STATE OF NEW YORK    )

COUNTY OF ONONDAGA )

        Christopher Boyce, being duly sworn, deposes and says:

        1.      At all relevant time in this case, I have been employed as a Claims Supervisor for

National Grange Mutual Insurance Company ("NGM") and have personal knowledge regarding

the facts and circumstances of the claim submitted to NGM by Blakely Pumping, Inc. d/b/a

Assential Pumping arising out of a two car motor vehicle action on November 3, 2005.

        2.      I base this affidavit on (1) the case notes pertaining to this claim which are

maintained in the ordinary course of business and contemporaneously recorded in NGM's

computer system by its employees; (2) upon my discussions and supervision of Edward C. Airel,

the adjuster to whom this claim was assigned; and (3) a lifetime of knowledge, training and

experience in the insurance industry.

        3.      I am aware that on January 3, 2006, Alfred Mainetti, personal counsel for Brian

Blakely, wrote to National Grange Mutual Insurance Company advising them for the first time

that Mr. Blakely had been involved in a two car motor vehicle accident on November 3, 2005, at the intersection of Route 28 and Forest Hill Drive in Kingston, New York, in the course of his employment with Assential Pumping, Inc. A copy of the summons and complaint was enclosed and National Grange was advised that Mr. Blakely was driving a motor vehicle insured by Progressive Casualty with policy limits of $25,000/$50,000.00, and that he understood that the minimal coverage would be insufficient. (Ex. L). This letter was received by NGM on or about January 6, 2004.

      4.      Following receipt of the claim, the case was assigned to claims adjuster Edward C. Airel on January 11, 2006. That same day, Mr. Airel called the insured, but failed to reach them. Mr. Airel then undertook to confirm what coverages had or had not been issued to the insured and sought to contact the insured's broker to obtain contact information for the insured. Having failed to receive any calls from the insured, Mr. Airel again called Blakely Pumping, Inc. d/b/a Assential Pumping on January 17, 2006 and again on January 25, 2006. Having failed to hear from the insured on his third attempt, Mr. Airel prepared correspondence to his insured seeking information regarding the claim. On January 30, 2006, Mr. Airel received a voice message by Stephen Blakely who provided another phone number for Mr. Airel to call. Upon receiving that message, Mr. Airel left a message requesting Mr. Blakely to contact him regarding the claim. Approximately 1 hour later, Mr. Airel received a call from Stephen Blakely who advised Mr. Airel that he was the President of Assential Pumping; that his brother Brian was the Vice President; and at the time of the accident, Brian was using his own vehicle at the time of the accident – a Dodge truck – and was on his way to assess a septic pump out job.

      5.      After discussing the claim with Mr. Blakely, Mr. Airel advised Mr. Blakely that there was likely no coverage under Assential Pumping's Commercial General Liability policy for

this accident and he would be hearing from Mr. Airel after he spoke to Tracy at Progressive Insurance Company (who provided personal auto coverage on Mr. Blakely's Dodge truck) and Brian Blakely's attorney. Mr. Airel then proceeded to discuss his investigation with me and we confirmed that there was no coverage for the loss.

6.    On January 31, 2006, NGM disclaimed coverage for the claim.

7.    CGL policies in general, and NGM's policy in this case, does not insure commercial vehicles. CGL policies primarily provide coverage to the insured for all such sum the insured may become legally obligated to pay as damages for "bodily injury", "property damage", "personal injury" or "advertising injury". In order to obtain coverage for a commercial automobile regularly used in the course of business, such as the personal vehicle Mr. Blakely used on a regular basis for the business of Assential Pumping, an insured would be required to purchase a commercial automobile insurance policy. Assential Pumping had no such coverage with NGM for the Dodge truck involved in the accident on November 3, 2005.

8.    Furthermore, the Nonowned and Hired Automobile Endorsement provided to Assential Pumping does not provide coverage for any autos owned by any partner or executive officer of the corporate insured or his household.

_Christopher Boyce_

Sworn to before me this
28th day of March, 2008

Notary Public

MARY S. LYNCH
Notary Public in the State of New York
Qualified in Onondaga County No. 4869265
My Commission Expires June 30, 20__

EXHIBIT  P

National
Grange
Mutual
Insurance
Company



220 Salina Meadows Parkway
Suite 200
PO Box 4828
Syracuse, NY 13221
(800) 962 5515 ext 1460
Direct 315-434-1460
Fax 315-434-1429

THIS LETTER IS BEING SENT BOTH CERTIFIED MAIL – RETURN RECEIPT REQUESTED
AND REGULAR MAIL

February 1, 2006

Steve Blakely
Assential Pumping, Inc.
11 Mary Lou Lane
Shokan, NY 12481

RE:    Policyholder: Assential Pumping, Inc.
       Our File # MPV52824-001-678
       Date of Accident: 11/3/05

Dear Mr. Blakely:

We are in receipt of a January 3, 2006 letter from Alfred Mainetti, Esq., who said he is
personal counsel for Brian Blakely, an employee of Assential Pumping, Inc. The letter states
that while in the course of his employment, Brian was in a motor vehicle accident. Mr.
Mainetti enclosed a copy of a summons and complaint that he says was served on Brian on
December 23, 2006. His letter was received on January 10, 2006 and was our first notice of
claim.

When you and I spoke on January 30th, you told me that you are the president of Assential
Pumping and that Brian is the vice president. You said that Brian was using his own vehicle,
a Dodge truck, and was on his way to assess a septic pumpout job when he was involved in
an accident. You said that Brian was in the course of his employment when the accident
happened

We must call your attention to your Businessowners Liability Coverage Form, identified as
MPV52824, which states in part:
"A. Coverages
   1. Business Liability
      a. We will pay those sums that the insured becomes legally obligated to    pay as
      damages because of "bodily injury", "property damage", "personal injury" or
      "advertising injury" to which this insurance applies. We will have the right and

A Main Street American Company

duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", "personal injury", or "advertising injury" to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

> (1) The amount we will pay for damages is limited as described in Section D - Liability and Medical Expenses Limits of Insurance; and
> (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements or medical expenses.

> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension - Supplementary Payments.

> b. This insurance applies:
> > (1) To "bodily injury" and "property damage" only if:
> > > (a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
> > > (b) The "bodily injury" or "property damage" occurs during the policy period."

Your Businessowners Liability Coverage Form sets forth who is insured under the policy:

"C.   Who Is An Insured
> 1. If you are designated in the Declarations as:
> > d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.
> 2. Each of the following is also an insured:
> > a. Your "employees", other than either your "executive officers"..., but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. . . ."

Your Businessowners Liability Coverage Form defines "Auto" as a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.........

Your Businessowners Liability Coverage Form sets forth the following exclusions which may apply to this loss:

"B.   Exclusions

● Page 3                                February 1, 2006

1. Applicable to Business Liability Coverage
   This insurance does not apply to:
   g. Aircraft, Auto or Watercraft
   "Bodily injury" or "property damage" arising out of the ownership,
   maintenance, use or entrustment to others of any aircraft, "auto" or
   watercraft owned or operated by or rented or loaned to any insured. Use
   includes operation and "loading or unloading."

Based on the above, there is no coverage available to you for this pending claim. If you
disagree with our position, or receive any additional material that you feel would provide
you with coverage, please forward copies to us immediately. Failure to do so could
jeopardize any coverage you may otherwise have available.

The contents of this letter does not constitute and is not intended as a waiver of any undisclosed
existing or future violations of any other terms of the policy contract.

If you have any questions about the effect this letter has on the application of coverage
under this policy, you may and are encouraged to consult your own counsel. Please feel
free to contact me at 1-800-962-5515 ext. 1460 to discuss this matter.

Sincerely yours,

Edward C. Airel
Claim Representative


cc: Alfred Mainetti, Esq.
    Brian Blakely
    Paul Goldstein, Esq.
    De Forest Group
    Naccarato Insurance
    Peter & Nancy Slingerland c/o Paul Goldstein, Esq.