**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------------x

NGM  INSURANCE COMPANY,

                              Plaintiff,

        -against-

BLAKELY PUMPING, INC. d/b/a ASSENTIAL PUMPING,
BRIAN J. BLAKELY, PETER J. SLINGERLAND, NANCY
SLINGERLAND and PROGRESSIVE CASUALTY
INSURANCE COMPANY,

                              Defendants.

------------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

                              **BRILL & ASSOCIATES, P.C.**

        By:      Haydn J. Brill (HB3040)
                 Attorneys of Plaintiff
                 111 John Street, Suite 1070
                 New York, New York 10038
                 (212) 374-9101
                 File No: 1281-NGM

## TABLE OF CONTENTS

Table of Contents                                          2

Table of Authorities                                       3

Statement of Facts                                         5

Argument

    **POINT I**

    PLAINTIFF IS ENTITLED TO SUMMARY
    JUDGMENTAS A MATTER OF LAW                           15

Conclusion                                                 22

## TABLE OF AUTHORITIES

### CASES

2540 Associates, Inc. v. Assicurazioni Generali, S.p.A., et al., 271 A.D.2d 282,
707 N.Y.S.2d 59 (1st Dept. 2000)                                             17

Anderson v. Liberty Lobby Inc., 477 U.S. 574,
106 S.Ct. 1348 (1986))                                                         15

Celotex Corp. v. Catrett, 477 U.S. 317,
106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)                                          15

D'Amico v. City of New York,
132 F.3d 145, (2d Cir. 1988)                                                   15

Eppendorf-Netheler-Hinz GmbH v. Enterton Company,
89 F.Supp.2d 483 (S.D.N.Y. 2000)                                               15, 16

Farr Man Coffee Inc. v. Chester,
1993 WL 248799 (S.D.N.Y. 1993)                                                 20

Government Employees Insurance Co. v. Kligler, 42 N.Y.2d 863,
366 N.E.2d 865 (1977)                                                          16, 19

Ingersoll Mill. Mach. Co. v. M/V Bodena, 829 F.2d 293 (2d Cir.1987),
Cert. Denied, 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 860  (1988)            20

International Paper Co. v. Continental Casualty Co., 35 N.Y.2d 322,
361 N.Y.S.2d 873, 320 N.E.2d 619 (1974)                                        16

Johnson v. Travelers' Ins. Co., 269 N.Y. 401
199 N.E. 637 (1936)                                                            16, 17

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574,
106 S.Ct. 1348 (1986)                               .                          15

Quinn v. Syracuse Model Neighborhood Corp.,
613 F.2d 438 (2d. Cir. 1980)                                                   16

State Farm Mut. Auto. Ins. Co. v. Westlake, 35 N.Y.2d 587,
364 N.Y.S.2d 482, 324 N.E.2d 137 (1974)                                        16, 17,
21

Trinity Universal Insurance Co. v. Cincinnati Insurance Co.,
513 F.2d 915 (C.A. Ohio 1975)                                                  19, 20,
21

### STATUTES

F.R.C.P. §56                                                                   15, 22

## STATEMENT OF FACTS

### Facts Relating to Brian Blakely and Blakely Pumping, Inc.:

On November 3, 2005, Brian Blakely was involved in a motor vehicle accident with Peter Slingerland while driving his 2004 Dodge pickup truck. (Ex. A pgs. 23-24, 27). At the time of the accident, Brian was driving from a Hope Depot where he had purchased some supplies and tools, and was heading to a job/customer in the furtherance of his business, Blakely Pumping, Inc. (Ex. A pg. 27). As a result of the motor vehicle accident that occurred on November 3, 2005, Peter Slingerland commenced an action for personal injuries against Brian Blakely, individually, and Blakely Pumping, Inc. (Ex. A, pg. 24 and Ex. B)

Blakely Pumping, Inc. is a septic pumping business, formed in 2004, which services Ulster County. (Ex. A, pgs. 8,10). On June 17, 2004, the first meeting of the Board of Directors of Blakely Pumping, Inc. was held and Steven D. Blakely was appointed President, Secretary and Treasurer, while Brian Blakely was appointed Vice President of the corporation. (Ex. C). Brian Blakely is a shareholder in Blakely Pumping, Inc., owning four percent of the shares. His brother, Steven Blakely, owns the other ninety-six percent. (See, Ex. A, pg. 10 and Ex. D). Blakely Pumping, Inc. filed a Certificate of Incorporation in Ulster County on August 23, 2004 (Ex. E). Blakely Pumping, Inc. filed a Certificate of Assumed Name with Ulster County on September 13, 2004 to conduct business under the name of Assential Pumping. (Ex. F). Blakely Pumping, Inc. had no change in its officers from the time Brian was appointed Vice

President, and did not have any additional shareholders from its inception until the time of the subject accident on November 3, 2005. (Ex. A, pgs. 14-15).

Blakely Pumping, Inc. purchased a pump truck that was used in connection with its business from Amthor Incorporated in Walden, New York. Brian's brother, Steven Blakely, made the arrangements to procure insurance for the pump truck. (Ex. A, pgs. 16-17). However, in November of 2005, Brian personally owned a 2004 Dodge pickup truck that he purchased new from Dimeco Motors in Kingston, New York. (Ex. A, pgs. 17-18 and Ex. G pg. 14). Brian procured personal automobile insurance for his 2004 Dodge pickup truck from Iapoce Insurance and purchased a policy of insurance from Progressive Insurance Company. (Ex. A, pgs. 18-20). Brian was not originally aware of how much coverage his Progressive Insurance policy afforded him until after his accident with Mr. Slingerland. Following the accident, he was informed that he had minimal coverage through Progressive in the amount of twenty-five thousand dollars per person. (Ex. A, pgs. 21-22). Brian would use his 2004 Dodge pickup truck in connection with Blakely Pumping, Inc. at all times, unless he specifically needed the pump truck to perform septic pumping for a client. He would use his 2004 Dodge pickup truck in lieu of the pump truck for business purposes, to keep fuel costs down and to prevent wear and tear of the pump truck. (Ex. A, pgs. 27-28). However, he would also use the 2004 Dodge pickup truck for personal use as well. (Ex. A, pg. 30) Besides for the pump truck and Brian's 2004 Dodge pickup truck, no other vehicle was used in connection with Blakely Pumping, Inc. (Ex. A, pg. 26). Brian was not involved in procuring the commercial insurance policy for the corporation, his brother Steven handled it. (Ex. A, pg. 27).

Steven Blakely procured the NGM commercial general liability policy for the corporation from a broker called Nacarrato. (Ex. A, pg. 32). At no point in time while Blakely Pumping, Inc. was obtaining commercial insurance, did Brian have to furnish a copy of his personal Progressive automobile policy for his 2004 Dodge pickup truck. (Ex. A, pgs. 34-35). He is unaware if anyone ever advised the broker, either DeForest Agency or Nacaratto, that he was using his personal 2004 Dodge pickup truck in connection with the business of Blakely Pumping, Inc. (Ex. A, pg 36). Lastly, Brian did not know why his brother purchased a non-owned auto endorsement to the commercial policy, as he never discussed same with him. (Ex. A, pgs. 36-37).

**Facts Relating to Steven Blakely and Blakely Pumping, Inc.:**

Steven Blakely is President of Blakely Pumping, Inc. and the individual who deals with the financial responsibilities and paper work in connection with Blakely Pumping, Inc. (Ex. H, pg. 9, 23). Steven and his brother Brian are the only employees of Blakely Pumping, Inc. (Ex. H, pg. 9-10). Steven purchased a pump truck in his own name for the company. Aside from the pump truck, the company did not acquire any other vehicles. (Ex. H, pg. 11). Steven procured insurance for the truck over the phone, from Ms. Chandy Stott who worked for the DeForest Agency. He had dealt with Ms. Stott in the past to insure his personal vehicles and commented that he never gets into the paperwork too deeply with her; she just gives him the insurance he needs. (Ex. H, pg. 12-13). No one ever advised him that he needed to procure insurance for Blakely Pumping, Inc. When he called to insure the truck, Ms. Stott informed him that he needed a general liability policy as well. (Ex. H, pgs. 27-28). The issue of whether or not any other vehicles would be used in connection with Blakely Pumping, Inc., was never discussed

with Ms. Stott. (Ex. H, pg. 13). He also never discussed with Ms. Stott, whether any other vehicles would ever be used in connection with business aside from the pump truck, or who the employees of the company were. (Ex. H, pgs. 30-31). Additionally, Ms. Stott never inquired as to what kind of vehicle Brian drove or whether Brian would be using a vehicle in connection with the business. Ex. H, pgs. 32-33).

Steven purchased a general liability policy for Blakely Pumping from Ms. Stott. (Ex. H, pg. 14). He claims to not even know what a non-owned hired automobile endorsement is, in connection with his commercial policy. (Ex. H, pg. 15). He wasn't sure if he obtained one policy of insurance for the business and the pump truck or if he needed to obtain a separate policy for each. (Ex. H pgs. 15-16). He could not recall ever discussing the use of personal vehicles in connection with the business, with Ms. Stott or any other insurance people, after he obtained his business policy with National Grange Mutual Insurance Company. (Ex. H, pg. 16).

Steven Blakely did not know if he ever purchased an excess or umbrella liability policy in connection with Blakely Pumping, Inc., as he does not even know what an excess and/or umbrella policy is. He further never even read the policy he obtained from National Grange Mutual Insurance Company for the pumping business. (Ex. H, pg. 22). He has never had any discussions with anyone from either DeForest Group or Nacaratto about the National Grange Mutual insurance policy either before or after the underlying motor vehicle accident. (Ex. H, pgs. 22-23).

Blakely Pumping, Inc. did not acquire a commercial automobile policy following Mr. Slingerland's accident in November of 2005. (Ex. H, pg. 25). Following the accident, his brother's 2004 Dodge pickup truck was repaired and Brian continued to use it for

company purposes such as purchasing supplies from Hope Depot. (Ex. H, pgs. 25-26). The company's insurance has not changed at all following the underlying automobile accident. (Ex. H, pg. 26).

Steven confirmed that the pickup truck that was involved in the accident with Mr. Slingerland was owned personally by his brother, Brian, and that at the time of the accident, his brother was an officer of Blakely Pumping, Inc. (Ex. H, pgs. 26-27). Steven did not handle the business affairs in connection with action for personal injuries commenced by Slingerland and never informed DeForest or National Grange Mutual about the lawsuit. He believes his brother handled all affairs in connection with the lawsuit with the assistance of their counsel Al Mainetti. (Ex. H, pg. 34).

**Facts Relating to Peter Slingerland:**

At the time of his accident on November 3, 2005, Peter Slingerland owned a 2003 Hyundai Sonata and a 1997 Honda CRV. He was the primary driver of the Sonata and his wife would drive the Honda. (Ex. I, pg. 8). He obtained automobile insurance for the Sonata through State Farm Insurance Companies and believed that his wife had a separate policy through State Farm as well, for the Honda. (Ex. I, pgs. 8-10).

Following his accident, Peter Slingerland understood that his insurance policy through State Farm provided up to one hundred thousand dollars in underinsured motorist coverage, that pertained to injuries of his that might exceed the liability limits of someone who was responsible for an accident. (Ex. I, pgs. 11-12). The 100,000/300,000 underinsured motorist coverage is confirmed on the declaration sheet from State Farm for the policy that was renewed in August of 2005. (Ex. J). Mr. Slingerland also maintained a homeowner's policy with Statefarm, and had life insurance and disability benefits

through his employer. (Ex. I, pg. 13). He believes that someone will be making a claim at some point to State Farm, for the underinsured motorist benefits in connection with his accident. (Ex. I, pg. 29).

At a point in time, Peter Slingerland became advised that Progressive offered to settle his personal injury claim arising from the November 3, 2005 accident, in whole or in part against Brian Blakely for the sum of twenty-five thousand dollars. (Ex. I, pgs. 14-15). State Farm even wrote to plaintiff's counsel on April 27, 2007 advising that permission was granted to accept the primary tort- feasor's offer of twenty-five thousand dollars. (Ex. K). Progressive paid Mr. Slingerland twenty-five thousand dollars and there were certain stipulations that were required as part of that settlement. (Ex. I, pg. 15). On May 4, 2007, Mr. Slingerland and his wife, Nancy, executed a Release, discharging Brian Blakely for all claims arising out of the November 3, 2005 accident. (Ex. L).

Besides for the settlement with Progressive and monies paid by his health insurance for medical bills, Mr. Slingerland was receiving money from his disability insurance carrier, First Unum, but is not longer receiving same. He approximated that the payments totaled between three and four thousand dollars. He never received any money directly from Brian Blakely or Blakely Pumping, Inc. (Ex. I, pg. 16-17). He estimated incurring out of pocket expenses in connection with his medical treatment for an amount less than one thousand dollars. (Ex. I, pgs. 17-19). Mr. Slingerland currently works the same amount of hours and is paid the same salary as he did prior to his accident. (Ex. I, pgs. 30-31).

**Facts Relating to NGM's Disclaimer**:

On January 3, 2006, Alfred Mainetti, personal counsel for Brian Blakely, wrote to National Grange Mutual Insurance Company advising them for the first time that Mr. Blakely had been involved in a motor vehicle accident on November 3, 2005 in the course of his employment with Assential Plumbing, Inc. A copy of the summons and complaint was enclosed and National Grange was advised that Mr. Blakely was driving a motor vehicle insured by Progressive Casualty with policy limits of $25,000/$50,000.00, and that he understood that the minimal coverage would be insufficient. (Ex. M).

This letter was received by NGM on or about January 6, 2004. The case was assigned to claims adjuster Edward C. Airel on January 11, 2006. Mr. Airel then undertook the process to confirm the coverages issued to the insured; and contact the insured's broker to obtain contact information for the insured. Having failed to receive a response to his calls of January 11th, 2006, Mr. Airel again called the insured on January 17, 2006; and again on January 25, 2006. Having failed to hear from the insured on his third attempt, Mr. Airel prepared a correspondence to the defendant seeking information regarding the claim, (See Ex. N). On January 30, 2006, Mr. Airel was left a voice message by Stephen Blakely who provided another phone number for Mr. Airel to call, at which time Mr. Airel left a message at this new number. Approximately one hour later, Mr. received a call from Stephen Blakely, who advised Mr. Airel that he was the President of Assential Pumping; that his brother Brian was the Vice President; and at the time of the accident, Brian was using his own vehicle, a Dodge truck, and was on his way to assess a septic pump out job. Mr. Airel advised Mr. Blakely that there is likely no coverage under Assential Pumping's CGL policy for this accident and he would be

hearing from Mr. Airel after he spoke to Tracy from Progressive Insurance. Mr. Airel proceeded to discuss his investigation with his supervisor, Christopher Boyce, Esq., and confirmed that there was no coverage for the loss. The details surrounding this investigation are contained in the Affidavit of Christopher Boyce, Esq. annexed as Ex. O.

After NGM undertook the aforementioned investigation and examination of the claim, on February 1, 2006, in response to Mr. Mainetti's letter, National Grange Mutual wrote to Mr. Steven Blakely advising that his Businessowner's Liability Coverage Form does not provide coverage for the subject occurrence. Under the heading "B. Exclusions" the policy states that Business Liability Coverage does not apply to bodily injury arising out of the ownership or use of any "auto". The Businessowner's Liability Coverage Form defines "auto" as a land motor vehicle, trailer or semitrailer designed for travel on public roads. As the subject occurrence arose from an automobile accident, when the Vice President of Assential Pumping was using his own vehicle in connection with the business, National Grange Mutual advised that there would be no coverage available under the Business Liability Policy. The letter was copied to Brian Blakely, Paul Goldstein (Slingerland's counsel), the Slingerlands and Mr. Mainetti.(See, Ex. P and the policy itself as Ex. Q)

On March 18, 2006, Mr. Mainetti wrote to National Grange Mutual again, this time enclosing an amended summons and complaint and requesting that National Grange Mutual provide a defense to Blakely Pumping, Inc., d/b/a Assential Pumping, Inc. despite the above referenced disclaimer letter. (Ex. R). On March 20, 2006, Paul Goldstein, counsel for the Slingerlands in this declaratory judgment action and the underlying bodily injury action, wrote to National Grange enclosing the summons and complaint, and

requesting a copy of National Grange Mutual's insurance policy. (Ex. S). Subsequently, on March 23, 2006, National Grange Mutual wrote to Steven Blakely, again, advising that there was no coverage available under the Business Liability Policy due to the circumstances surrounding the subject accident. (Ex. T).

On July 24, 2006, Mr. Goldstein wrote to National Grange Mutual advising that he believed the disclaimer to be invalid as Blakely Pumping, Inc. purchased a "Hired Auto and Non-owned Auto Liability-New York" endorsement to the policy which deletes the exclusionary language that was referred to in the disclaimer letter. (Ex. U).

In response to said letter, on August 4, 2006, National Grange Mutual wrote to Mr. Goldstein explaining that there was still no coverage for the subject occurrence under the "Hired Auto and Non-owned Auto Liability" endorsement. The letter explains that the language of the endorsement provides coverage for a "non-owned auto" only for partners or executive officers, but only while such "non-owned auto" is being used in your business. However, the endorsement clearly states that "None of the following is an insured: Any partner or executive officer for any "auto" owned by such partner of officer or a member of his or her household." Accordingly, based on the clear language of the endorsement National Grange Mutual continued to disclaim as there is still no coverage for the subject accident, as an executive officer of Blakely Pumping, Inc. (Brian Blakely) was operating an automobile that he personally owned. The letter was copied to Mr. Mainetti and Brian Blakely. (Ex. V).

On June 19, 2007, Mr. Goldstein wrote to National Grange Mutual once again to advise that an inquest for damages was scheduled in the Slingerland action. Mr. Goldstein repeated his position that there was coverage under the policy in response to

National Grange Mutual's letter of March 23, 2006, reiterating his belief that the "Hired Auto and Non-owned Auto Liability" endorsement applied. However, Mr. Goldstein failed to address National Grange Mutual's letter of August 4, 2006, where it was clearly explained that even under the "Hired Auto and Non-owned Auto Liability" endorsement, there would still be no coverage due to the circumstances surrounding Mr. Slingerland's accident. (Ex. W).

Lastly, on July 23, 2007, National Grange Mutual wrote to the Blakely Pumping, Inc., advising that their Business Owners Policy and "Hired Auto and Non-owned Auto Liability" endorsement do not provide coverage for Mr. Slingerland's accident, as Brian Blakely did not qualify as an insured under the endorsement. National Grange hired counsel for Blakely Pumping, Inc., with respect to the default and then, impending inquest on damages; however, specifically stated that the hiring of counsel for the inquest did not constitute coverage. The letter was copied to Mr. Mainetti and Mr. Goldstein. (Ex. X).

On July 19, 2007 the instant declaratory judgment was filed in the United States District Court for the Southern District of New York seeking an adjudication of the rights and responsibilities of National Grange Mutual Insurance Company under the insurance policy it issued to Blakely Pumping, Inc. Copies of all the pleadings are provided as Ex. Y.

## ARGUMENT

## POINT I

## PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW

**A.**     **Standard For Summary Judgment.**

The standard to be applied by the Court in deciding a motion for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure. Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c), See also, Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) and D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1988).

The moving party has the initial burden of tendering sufficient evidence, demonstrating the absence of any genuine issue of material fact. After the moving party has satisfied its initial burden, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e), See also, Anderson v. Liberty Lobby Inc., 477 U.S. 242, 250, 106 S.Ct. 2502, 2511 (1986). The non-moving party may not rely upon, "conclusory allegations" that raise no more than "some metaphysical doubt as to the material facts". Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986). The non-moving party must offer, "concrete evidence from which a reasonable juror could return a verdict in his favor." See, Anderson, 477 U.S. at 256, 106 S.Ct. at 2514.

As set forth in the case of Eppendorf-Netheler-Hinz GmbH v. Enterton Company, 89 F.Supp.2d 483 (S.D.N.Y. 2000), summary judgment is valuable in expediting the process of litigation. Citing, Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir.1980). Judges should not be required to submit a question to a jury merely because some evidence has been introduced by the party opposing the application, unless it would warrant the jury in finding a verdict in favor of that party. See, Eppendorf, F.Supp.2d at 485.

For the reasons that follow, it is respectfully submitted that the plaintiff is entitled to summary judgment based on the undisputed policy provisions of the Non-owned Auto Endorsement; the uncontested fact that the Brian Blakely was an executive officer of the corporate insured using his personal automobile in furtherance of the business affairs of Blakely Pumping, Inc.; and the timely disclaimer of coverage by the plaintiff.

**B.** **The Business Policy And "Hired Auto And Non-Owned Auto Liability-New York" Endorsement Issued By National Grange Mutual To Blakely Pumping, Inc. D/B/A Assential Pumping, Simply Does Not Provide Coverage For Brian Blakely, As He Was An Executive Officer Driving A Vehicle He Owned, While Acting In The Scope    Of His Business At The Time Of His Motor Vehicle Accident With Peter_ Slingerland.**

Under New York law, an insurer seeking to invoke an exclusion provision in an insurance contract has the burden to demonstrate that the "allegations of the complaint place that pleading solely and entirely within the policy exclusions, and, further that the allegations, *in toto*, are subject to no other interpretation." International Paper Co. v. Continental Casualty Co., 35 N.Y.2d 322, 325, 361 N.Y.S.2d 873, 320 N.E.2d 619 (1974). Furthermore, as discussed by the New York Court of Appeals in Government Employees Insurance Co. v. Kligler, 42 N.Y.2d 863, 366 N.E.2d 865 (1977), "[w]hile it is true that policies of insurance are to be construed liberally in favor of the insured and

strictly against the insurer, where the provisions of the policy are clear and unambiguous, they must be given their plain and ordinary meaning, and courts should refrain from rewriting the agreement." Id at 64, citing, State Farm Mut. Auto. Ins. Co. v. Westlake, 35 N.Y.2d 587, 364 N.Y.S.2d 482, 324 N.E.2d 137; and Johnson v. Travelers' Ins. Cp., 269 N.Y. 401, 199 N.E. 637.

CGL policies in general, and the NGM policy at issue in this case, essentially provide coverage for damages the insured becomes legally obligated to pay for "bodily injury", "property damage", "personal injury" or "advertising injury". CGL polices, however, similar to the General Liability Policy issued to Blakely Pumping, Inc., a copy of which is attached as Ex. N, typically exclude coverage for owned autos. Such is the case in the NGM policy under consideration by the court. As set forth in the Exclusions of the Policy contained in Section B:

> **B. Exclusions.**
> g.  Aircraft, Auto Or Watercraft
>
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

As set forth in the affidavit of Christopher Boyce, the owned auto exclusion in this case was timely and appropriately raised by National Grange Mutual's disclaimer letters, copies of which are attached hereto as Ex. P and T. As the court is aware, an insurance carrier is entitled to a reasonable opportunity to conduct a prompt, diligent and good faith investigation of a claim. See 2540 Associates, Inc. v. Assicurazioni Generali, S.p.A., et al., 271 A.D.2d 282 (1st Dept. 2000).

Thereafter, on July 24, 2006, counsel for Mr. Slingerland wrote to National Grange Mutual advising that he believed the disclaimer to be invalid as Blakely Pumping,

Inc. purchased a "Hired Auto and Non-owned Auto Liability-New York" endorsement to the policy which deletes the exclusionary language that was referred to in the disclaimer letter. (Ex. U).

In response to said letter, on August 4, 2006, National Grange Mutual wrote to Mr. Goldstein explaining that there was still no coverage for the subject occurrence under the "Hired Auto and Non-owned Auto Liability" endorsement. (Ex. V). As the court will note, that Endorsement, which provides an additional grant of coverage under the policy, excludes coverage for any vehicle owned by any executive officer or a member of his or her household: As set forth in the Endorsement:

> "None of the following is an insured:
> *        *        *
> (2) Any partner or "executive officer" for any "auto"
> owned by such partner or officer or a member of his or her
> household."

Accordingly, under the plain meaning of the insurance contract; the undisputed ownership of the Dodge pick up truck and the undisputed fact that Mr. Blakely was an executive officer of the corporation, the facts surrounding the subject automobile accident preclude coverage for Blakely Pumping, Inc. and Peter Slingerland.

Plaintiff's amended complaint in the underlying action clearly sets forth in paragraph "6" that Brian Blakely was the owner and operator of a motor vehicle bearing New York registration number 26788JB for the year 2005 (the 2004 Dodge pickup truck), (Ex. B). Paragraph "8" of the amended complaint states that at the time of the subject accident, Brian Blakely, was acting in the course/scope of his employment with Blakely Pumping, Inc. d/b/a Assential Pumping (Ex.B). As Brian Blakely, an executive officer of Blakely Pumping, Inc., was driving his personal automobile in the scope of his

employment at the time of the accident, the allegations of the complaint clearly place the pleading "solely and entirely within the policy exclusion".

In <u>Government Employees Insurance Co. v. Kligler</u>, the automobile policy in question provided coverage to the "named insured" for accidents involving the designated covered vehicle under the policy. The policy however, also provided coverage in certain instances for a "temporary substitute automobile" or a "non-owned" vehicle. The named insured included the individual who executed the insurance contract and their spouse. The policy defined a "non- owned" vehicle as any automobile, other than a temporary substitute automobile, not owned by the named insured. As the subject accident in that case involved the wife of the named insured (making her an insured,) driving a car she owned, the car was excluded from coverage.

In the case at bar, the same policy definitions exist. Brian Blakely may first appear to be insured under the "Hired Auto and Non-owned Auto Liability-New York" endorsement as he was an executive officer, acting in the furtherance of the business; however, he was driving an automobile he personally owned. As such, no coverage exists for the Slingerland accident under the endorsement.

Although plaintiff is mindful that it is not binding authority, plaintiff refers this court to the case of <u>Trinity Universal Insurance Co. v. Cincinnati Insurance Co.</u>, 513 F.2d 915 (C.A. Ohio 1975) as directly on point and analogous to the facts surrounding the instant action. In <u>Trinity</u>, the United States Court of Appeals for the Sixth Circuit was presented with a declaratory judgment action brought by a company's general liability insurer (Trinity) against the company's catastrophe insurer (Cincinnati), for a declaration of rights with respect to an accident caused by the negligence of an executive officer of a

company (Mrs. Chittum) who was driving her husband's vehicle, who also was an executive officer of the company, acting in the scope of her employment.

The Trinity policy language contained the following provision:

> *Each of the following is an Insured under this insurance to*
> *the extent set forth below:*
> *(b) any partner or executive officer thereof, but with*
> *respect to a non-owned automobile only while such*
> *automobile is being used in the business of the named*
> *insured;*
> *None of the following is and insured;*
> *(iii) an executive officer with respect to an automobile*
> *owned by him or by a member of his household;*

Cincinnati claimed that the Trinity policy language was ambiguous as one provision defines Mrs. Chittum as an insured as she was an executive officer acting in the furtherance of her business; however, another provision excluded her from coverage. Cincinnati argued that under Ohio law any ambiguities in an insurance policy should be interpreted in the light most favorable to the insured, thus affording coverage to Mrs. Chittum under the Trinity Policy. New York law favors the same policy of construction as well, see, Ingersoll Mill. Mach. Co. v. M/V Bodena, 829 F.2d 293, 306 (2d Cir.1987), cert. denied, 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988); and Farr Man Coffee Inc. v. Chester, 1993 WL 248799 at *40 (S.D.N.Y. 1993).

The Court in Trinity, acknowledged that Ohio law favored such a policy but clarified that the aforementioned "rule of construction does not become applicable until an ambiguity is found in the policy which makes it susceptible of conflicting interpretations which cannot reasonably be reconciled." Trinity, 513 F.2d 915 at 918. The District Court was unable to find any ambiguities in connection with the subject

provisions of the Trinity policy and declared that the Trinity policy did not afford

coverage to Ms. Chittum.

The District Court explained that:

> "The provisions are obviously designed to cover
> any executive officer on company business driving
> an automobile not owned by the company, unless
> the automobile is owned by the executive or a
> member of his family. The rationale for structuring
> the coverage in this matter is understandable. The
> provisions protect corporate officers while they are
> driving automobiles not owned by the company but
> at the same time prevent the possible abuse of the
> company officers' wrongfully transferring their own
> personal risks to the company's insurance by
> erroneously insisting that they are on incidental
> company business when a loss occurs. Such abuses
> could result in the company's insurance having to
> bear losses which would ordinarily be covered by
> the officers' personal insurance."

Id at 918.

The policy language contained in the "Hired Auto and Non-owned Auto Liability-

New York" endorsement of the National Grange Mutual policy, reads almost identically

to the language contained in the Trinity policy. There is no ambiguity in the endorsement,

as the exclusion is worded exactly to prevent situations similar to the circumstances

surrounding Brian Blakely's accident.

To hold national Grange Mutual liable here, would be essentially re-writing the

insurance contract. It would absolve Blakely Pumping, Inc. for not purchasing a

commercial automobile policy for Brian's 2004 Dodge pickup truck that he used for

business purposes, and for not paying the necessary premiums for the added coverage. If

coverage were to be found for Peter Slingerland, it would expose National Grange

Mutual to a risk that was not contemplated by the contract and for which it never received

any type of compensation. See, <u>State Farm Mut. Auto. Ins. Co. v. Westlake</u>, 35 N.Y.2d 587, 592, 364 N.Y.S.2d 482, 324 N.E.2d 137 (Ct. of Appeals 1974).

## Conclusion

Accordingly, based on the foregoing, it is respectfully submitted that plaintiff is entitled to summary judgment in the instant declaratory judgment action pursuant to F.R.C.P §56. The policy language of the "Hired Auto and Non-owned Auto Liability-New York" endorsement of the National Grange Mutual policy is clear and unambiguous. As Brian Blakely, an executive officer, was driving a vehicle he personally owned at the time of the accident, there is no coverage available under the endorsement. Blakely Pumping, Inc. was obligated to purchase a commercial automobile policy for Brian's 2004 Dodge pickup truck, the moment he began using his truck for company business. The language of the endorsement is written specifically to avoid the abuse that is being attempted by the defendants. Brian Blakely's personal automobile insurance carrier at the time of the accident, Progressive Casualty, was the only insurer obligated to cover the 2004 Dodge pickup truck at the time of his accident on November 3, 2005. Further, in addition to the Progressive Casualty insurance, Peter Slingerland has underinsured motorist benefits available through his State Farm policy. As such, Mr. Slingerland is entitled to benefits from two different insurers that actually entered into contracts and received compensation to provide coverage in connection with the November 3, 2005 accident, and not from National Grange Mutual Insurance Company.

Dated: New York, New York
        March 28, 2008

**BRILL & ASSOCIATES, P.C.**

By:    Haydn J. Brill (HB3040)
Attorneys for Plaintiff
111 John Street, Suite 1070
New York, New York 10038
(212) 374-9101
File No: 1281 NGM