UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------x
NGM  INSURANCE COMPANY,                                                      Docket No. 07-CV-6517

          Plaintiff,

   -against-

BLAKELY PUMPING, INC. d/b/a ASSENTIAL PUMPING,
BRIAN J. BLAKELY, PETER J. SLINGERLAND, NANCY
SLINGERLAND and PROGRESSIVE CASUALTY
INSURANCE COMPANY,

          Defendants.
-----------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN REPLY/FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

          **BRILL & ASSOCIATES, P.C.**

          /s/ Haydn J. Brill
     By: Haydn J. Brill (HB3040)
       Attorneys for Plaintiff
       111 John Street, Suite 1070
       New York, New York 10038
       (212) 374-9101
       File No: 1281-NGM


# TABLE OF CONTENTS

Table of Contents — 2

Table of Authorities — 3

Argument

    **POINT I**

    **DEFENDANTS' CROSS MOTION SHOULD BE DENIED AS UNTIMELY** — 5

    **POINT II**

    **AT NO POINT IN TIME WAS THERE EVER ANY COVERAGE AFFORDED BY THE NGM POLICY, FOR BRIAN BLAKELY DRIVING A VEHICLE HE OWNED IN THE COURSE OF HIS EMPLOYMENT AS AN EXECUTIVE OFFICER OF BLAKELY PUMPING, INC.** — 6

    **POINT III**

    **DEFENDANTS' PROPOSED INTERPRETATION OF THE NGM POLICY WOULD RENDER THE ENTIRE POLICY MEANINGLESS** — 11

Conclusion — 14

# **TABLE OF AUTHORITIES**

## **CASES**

Consolidated Edison Co. of New York, Inc. v. Hartford
Ins. Co., 203 A.D.2d 83 (1st Dept. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

Federal Insurance Company v. Allstate Insurance Company,
111 A.D.2d 146, 488 N.Y.S.2d 780 (2nd Dept. 1985). . . . . . . . . . . . . . . . . . . . . . .   6

Handelsman v. Sea Insurance Company, Ltd.,
85 N.Y.2d 96, 647 N.E.2d 1258 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

Hartford Insurance Company v. County of Nassau,
46 N.Y.2d 1028, 416 N.Y.S.2d 539 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

Jefferson Insurance Company of New York v. Travelers Indemnity Company,
92 N.Y.2d 363, 681 N.Y.S.2d 208 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

Liberty Mutual Insurance Company v. Aetna Casualty & Surety Company, et al.,
168 A.D.2d 121 at 141, 571 N.Y.S.2d 735 at 746 (2nd Dept. 1991) . . . . . . . . . . . . . . .   6

Luria Bros. & Co., Inc. v. Alliance Assur. Co. Ltd.,
780 F2d 1082 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

National Abatement Corp. v. National Union Fire Ins. Co. of
Pittsburgh, 33 A.D.3d 570 (1st Dept. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

Worcester Ins. Co. v. Bettenhauser,
95 N.Y.2d 185, 734 N.E.2d 734 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

Zappone v. Home Ins. Co.,
55 N.Y.2d 131, 432 N.E.2d 783 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

**REPLY TO DEFENDANTS' STATEMENT OF FACTS**

The plaintiff would like to correct a misstatement in the defendants' Statement of Facts. On page 4 of their Memorandum of Law, it is claimed that the "Owned Auto" Exclusion upon which plaintiff relied in excluding coverage to the defendants was not part of the policy because it had been deleted by the Hired Auto and Non-Owned Auto Liability Endorsement. The Court should be aware, however, that this is not the case. An alteration to the status of any Exclusion contained in plaintiff's policy was only triggered in the event that insurance was provided under the Hired and Non-Owned Auto Endorsement. See Hired Auto and Non-Owned Auto Liability Endorsement, No. BP 04 36 01 97 at Para. (B). As Mr. Blakely was not covered under that Endorsement and because the Endorsement bestowed an additional grant of coverage for which no disclaimer was even necessary, Plaintiff's motion should be granted in its entirety and the defendants' untimely cross motion should be denied.

## **ARGUMENT**

### **POINT I**

#### **DEFENDANTS' CROSS MOTION SHOULD BE DENIED AS UNTIMELY**

**A.    Defendants Peter Slingerland and Nancy Slingerland's cross-motion was to be filed on March 28, 2008.**

As stipulated to and agreed by and between the parties and as required by this Court, dispositive motions for summary judgment were to be filed on or before March 28, 2008, with opposition papers filed on or before April 11, 2008 and reply affirmations filed on or before April 21, 2008.

As such, while defendants were certainly permitted to file an Affirmation in Opposition to plaintiff's initial motion on or before April 11, 2008, they were not granted leave to file any cross-motions after the March 28, 2008 deadline. Should defendants have wished to move for summary judgment, the issue should have been raised when the motion schedule was last addressed on March 13, 2008. Accordingly, their cross motion should be denied on its face.

Assuming, however, the court entertains the cross motion, it is respectfully submitted that the cross-motion is without merit and plaintiff's application should be granted in its entirety.

**POINT II**

**AT NO POINT IN TIME WAS THERE EVER ANY COVERAGE AFFORDED BY THE NGM POLICY, FOR BRIAN BLAKEY DRIVING HIS OWN PICKUP TRUCK IN THE COURSE OF HIS EMPLOYMENT AS AN EXECUTIVE OFFICER OF BLAKELY PUMPING, INC.**

B.  **NGM did not owe a duty to timely disclaim since there was never any contractual relationship between the carrier and claimant that would have given rise to any duty in connection with the Slingerland accident.**

Brian Blakely used his personal pickup truck in connection with the daily activities of Blakely Pumping, Inc., to preserve fuel costs and avoid wear and tear on the company's pump truck. The plain language of the Hired Auto and Non-Owned Auto Liability Endorsement provides coverage for a "non owned auto" driven by partners/executive officers in the scope of their business, but only if such "non owned auto" is not owned by such partner/executive officer or member of his or her household. The purpose of such a grant of coverage is to provide protection to the insured for the occasional or infrequent use of a vehicle not owned by him. It is not intended as a substitute for a commercial automobile policy for a vehicle that was used in the daily operations of Blakely Pumping, Inc. See, Federal Insurance Company v. Allstate Insurance Company, 111 A.D.2d 146, 488 N.Y.S.2d 780 (2nd Dept. 1985) and Liberty Mutual Insurance Company v. Aetna Casualty & Surety Company, et al., 168 A.D.2d 121 at 141, 571 N.Y.S.2d 735 at 746 (2nd Dept. 1991).

In Worcester Ins. Co. v. Bettenhauser, 95 N.Y.2d 185, 734 N.E.2d 734 (2000), the New York Court of Appeals held that a "[d]isclaimer pursuant to Section 3420(d) is unnecessary when a claim falls outside the scope of the policy's coverage portion. Under those circumstances, the insurance policy does not contemplate coverage in the first

6

instance, and requiring payment of a claim upon failure to timely disclaim would create coverage where it never existed." Id at 188.

The Court in Worcester explained the distinction between a lack of coverage in the first instance, which would require no disclaimer and a lack of coverage based upon an exclusion, which would require a timely disclaimer, by citing the cases of Zappone v. Home Ins. Co., 55 N.Y.2d 131, 432 N.E.2d 783 (1982); and Handelsman v. Sea Insurance Company, Ltd., 85 N.Y.2d 96, 647 N.E.2d 1258 (1994).

In Zappone, coverage was conditioned upon a loss arising out of the use of a covered or non-owned automobile. Since the vehicle involved was owned by a family member and was not within the coverage clause, the Court of Appeals concluded that there was never any contractual relationship between the carrier and the claimant that would give rise to any duty, including the duty to disclaim.

The Court then distinguished the facts surrounding the Handelsman case. In Handelsman, the policy provided for coverage for bodily injury for which any "insured' becomes legally responsible because of an auto accident, and defined "insured" as a family member for the use of any auto. Handelsman at 99-100. The policy also contained a specific exclusion stating that coverage described elsewhere did not apply to the ownership or use of a vehicle "owned by any family member" that was not a "covered auto". Id at 101. Since the son was an "insured" who satisfied all the conditions of the coverage provisions, which did not make specific reference to vehicles, the Court concluded that there was a contractual relationship that warranted a timely disclaimer.

Of most interesting note, the Court in Handelsman, distinguished the ruling in Zappone, since in Zappone, coverage was provided only for liability arising out of the use

7

of a covered or non-owned auto. The Court explained that in <u>Handelsman</u>, there was no narrowing reference made to non-owned vehicles, and in contrast the Sea Insurance policy provided coverage for damage which any insured became liable for arising out of an auto accident. <u>Handelsman</u> at 102.

In the case at bar, the grant of coverage is most analogous to the coverage provisions in <u>Zappone</u>. As the pickup truck involved in the Slingerland accident was owned by an executive officer of Blakely Pumping, Inc., it did not fall within the grant of coverage provided by the Hired Auto and Non-owned Auto Liability Endorsement. Estoppel cannot create coverage when none existed under the policy's terms. <u>See e.g.</u>, <u>Jefferson Insurance Company of New York v. Travelers Indemnity Company</u>, 92 N.Y.2d 363 at 370; citing, <u>Zappone v. Home Ins. Co.</u>, 55 N.Y.2d 131, (which, interestingly, is cited in defendant's brief).

**B.    NGM's disclaimer was timely and the case law cited by defendants is clearly distinguishable.**

Even if this Court determines that NGM did owe a duty in connection with the underlying action, they fulfilled their duty by timely disclaiming coverage. Defendants rely on the case of <u>Hartford Insurance Company v. County of Nassau</u>, 46 N.Y.2d 1028 (1979), as standing for the principal that failure of an insurer to timely disclaim coverage, precludes effective disclaimer or denial. However, in <u>Hartford</u>, the insurance carrier upon receiving notice of claim, did nothing for two months after receiving notice of a claim and subsequently commenced a declaratory judgment action. There was no explanation given for the delay by the insurer and the only thing Hartford did was send a reservation of rights letter to its insured.

8

Defendants contend that NGM should be estopped from disclaiming coverage because the Hired Auto and Non-owned Auto Liability endorsement was not invoked until August of 2006. This clearly is a misstatement of the facts and circumstances surrounding this matter.

Assuming, arguendo, that NGM did owe a duty to disclaim, it is undisputed that upon obtaining its first notice of the claim on January 6, 2006, it conducted a timely investigation that was enunciated in the Affidavit of Christopher Boyce annexed to your affirmant's Notice of Motion as Exhibit O. Contrary to Hartford, NGM did not delay its response to the defendants in any manner, but rather, engaged in a three week effort to contact the insured and ascertain the facts relevant to the underlying action before disclaiming coverage on February 1, 2006.

**C.    NGM did not waive its right to disclaim under the "Hired Auto and Non-owned Auto Liability" endorsement.**

In Luria Bros. & Co., Inc. v. Alliance Assur. Co. Ltd., 780 F.2d 1082 (2d Cir. 1986), the Circuit Court held that New York law established that an insurer is deemed as a matter of law to have intended to waive a defense to coverage where other defenses are asserted, and where the insurer possesses sufficient knowledge of the circumstances regarding the unasserted defense. Id at 1090-1091.

The position of NGM has been clear since the first disclaimer letter was transmitted to defendants on February 1, 2006, that its Commercial General Liability policy does not provide coverage for owned autos. Defendants attempt to circumvent the unwelcomed consequence of the disclaimer by improperly arguing that the Hired Auto and Non-Owned Auto Endorsement replaced the owned auto exclusion (which it did not), requiring NGM to disclaim under the Endorsement rather then the exclusion. This

9

argument must fail.  See Point III below. As an Executive Officer of the company who was using his own vehicle at the time of the accident, no coverage was available under the Hired Auto and Non-Owned Auto Endorsement.  As such, this defense was asserted from the outset and has never changed.

# POINT III

### DEFENDANT'S PROPOSED INTERPRETATION OF THE POLICY WOULD RENDER THE ENTIRE POLICY MEANINGLESS

**D.     The Hired and Nonowned Auto Provisions of the Policy are Additions to Coverage and Not Exclusions Requiring NGM to Disclaim Coverage.**

The courts of New York recognize a distinction between exclusions to coverage under a liability policy and a grant of additional coverage through an Endorsement to the policy.  See e.g., Consolidated Edison Co. of New York, Inc. v. Hartford Ins. Co., 203 A.D.2d 83 (1st Dept. 1994).  Where the claim falls outside the policy's coverage, as does defendant's claim herein, the insurer is not required to disclaim.  See National Abatement Corp. v. National Union Fire Ins. Co. of Pittsburgh, 33 A.D.3d 570 (1st Dept. 2006).  Here, in the case at bar, the Commercial General Liability policy written by plaintiff does not provide coverage for owned automobiles. See Page 4 of 13 of the Businessowners Liability Coverage Form at Para. (g). Aircraft, Auto or Watercraft.  However, by separate Endorsement, Blakely Pumping, Inc. purchased additional coverage for Hired and Nonowned Autos.

The Hired Auto and Non-Owned Auto Liability Endorsement was a grant of additional coverage under the general insuring agreement.  The Endorsement in question modified the policy by **(1)** adding Hired Auto Liability coverage to the scope of Coverage in Section A(1) of the insuring agreement to the named insured ("you") and its employees arising out of the maintenance or use of a hired auto (Section A(1) of Endorsement BP 04 36 01 97);  **(2)** adding Non-Owned Auto Liability coverage to the scope of Coverage in Section A(1) of the insuring agreement, but only to non-owned autos used by any person

other than Blakely Pumping, Inc. (referred to as "you" in Section A(2) of the Hired Auto and Non-owned Auto Liability Endorsement (No. BP 04 36 01 97); **(3)** by providing certain coverage for bodily injury to an employee of the insured, but only for insurance provided by the Endorsement (Id. at Section B); **(4)** by modifying the definition of "WHO IS AN INSURED" under Section C of the Businessowners Liability Coverage Form (See Businessowners Liability Coverage Form at p. 8 of 13), but again, only for coverage within the scope of the endorsement (Id. at Section B); and **(5)** by adding three definitions for "Auto Business", "Hired Auto" and "Non-owned Auto".

Here, the Endorsement created two additional grants of coverage: one for Hired Autos extending to the named insured and its employees under Section A(1) of the Endorsement and a separate grant of coverage for Non-Owned autos applicable only to persons other than the named insured. (See Section A(2) of the Endorsement).

Thus, the Hired and Non-Owned Auto Liability Endorsement did not, as plaintiffs contend, broadly create separate coverage for the corporation and Mr. Blakely individually. While it may have done so for Hired Auto liability, the same is not true for Non-Owned Autos. Accordingly, Mr. Blakely, in his capacity as an Executive Officer, was not insured for the use or operation of any autos owned by him or members of his household.

In arguing that Section B(2) of the Endorsement creates Non-Owned Auto liability coverage for the named insured and Mr. Blakely, defendant strains the plain meaning of the distinctions created in Section A of the Endorsement for Hired Autos and Non-Owned Autos.

Second, since "you" or Blakely Pumping, Inc. cannot have coverage for Non-Owned Auto Liability under Section A(2) of the Endorsement, Section B(2) of the policy (containing the alleged ambiguity) is entirely irrelevant. By its very own terms, Section B is only applicable when insurance <u>is</u> provided under the Endorsement. As set forth in Section A, that might be the corporation or its employees in the case of Hired Autos or any person other that the corporation in the case of Non-Owned autos. Thus, it is neither inconsistent nor ambiguous for Section C of the Endorsement to contemplate coverage being potentially available to the corporation, its executive officers or other persons.

Furthermore, defendants' broad, overreaching and strained interpretation of the policy ignores the explicit language of the policy which states that "Who is an Insured" is qualified by the language "to the extent set forth below". That language, which can only apply to persons other than the corporation in the context of Non-Owned Auto liability, simply does not provide coverage to Executive Officers of the corporation utilizing their privately owned automobiles within the scope of their employment. If defendants' argument was taken to its logical conclusion and coverage was provided separately to the corporation for the use of Non-Owned Autos utilized by Executive Officers in connection with the business of the named insured, the need for commercial automobile liability insurance altogether would be obviated. This is not the intent of the NGM policy in this case.

Accordingly, defendants' contention is devoid of merit and is a misinterpretation of the relevant case law.

**Conclusion**

Based on the foregoing, it is respectfully submitted that plaintiff is entitled to summary judgment in the instant declaratory judgment action pursuant to F.R.C.P §56. The policy language of the "Hired Auto and Non-owned Auto Liability-New York" endorsement of the National Grange Mutual policy is clear and unambiguous. As Brian Blakely, an executive officer, was driving a vehicle he personally owned at the time of the accident, there was never a contractual relationship between NGM and the claimant that gave rise to any type of duty, including the duty to timely disclaim. However, as evidenced in the correspondence between the parties in this action, it is clear that NGM did timely disclaim and on the same basis, since being first advised of the underlying action. Further, defendants' attempt to construe the NGM policy language is erroneous and without merit. The conjured ambiguities relied upon by defendants, would frustrate the plain meaning of the policy and are clearly a feigned attempt to create coverage where none exists. Accordingly, it is respectfully submitted that plaintiff's motion be granted in its entirety and defendants' application be denied.

Dated: New York, New York
April 21, 2008

                                                  **BRILL & ASSOCIATES, P.C.**

                                                  /s/ Haydn J. Brill
                                  By:   Haydn J. Brill (HB3040)
                                          Attorneys for Plaintiff
                                          111 John Street, Suite 1070
                                          New York, New York 10038
                                          (212) 374-9101
                                          File No: 1281 NGM

*Docket No. 07-CV-6517*                                   *Year 2007*
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NGM INSURANCE COMPANY,

                                                                                                                          Plaintiff,

                                            -against-

BLAKELY PUMPING, INC. d/b/a ASSENTIAL PUMPING, INC., BRIAN J. BLAKELY, PETER J. SLINGERLAND, NANCY SLINGERLAND and PROGRESSIVE CASUALTY INSURANCE COMPANY,

                                                                                                                        Defendants.

**MEMORANDUM OF LAW IN OPPOSITION TO THE CROSS MOTION AND IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**BRILL & ASSOCIATES, P.C.**
Attorneys for Plaintiff
111 John Street, Suite 1070
New York, New York 10038
(212) 374-9101

*To:*    ***
*Attorney(s) for*   ***

*Service of a copy of the within* ***   is hereby admitted.
*Dated:* ***

                                                           ..........................
                                                          *Attorney(s) for*   ***

***PLEASE TAKE NOTICE***

☐  *that the within is a (certified) true copy of a* ***
    *entered in the office of the clerk of the within named Court on* ***
NOTICE OF
ENTRY

☐  *that an Order of which the within is a true copy will be presented for settlement to*
    *the Hon.* *** *one of the judges of the within named Court, at* ***, *on* ***, *at* *** .
NOTICE OF
SETTLEMENT
*Dated:* ***

**BRILL & ASSOCIATES, P.C.**
Attorneys for Plaintiff
111 John Street, Suite 1070
New York, New York 10038
(212) 374-9101
File No: 1281-NGM

15